

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 29, 2019

**BY ECF**

The Honorable Colleen McMahon
Chief United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    **Re:**    *United States* **v.** *Darren Thomas*, 18 Cr. 153 (CM)

Dear Chief Judge McMahon:

The defendant in this case, Darren Thomas, is scheduled to be sentenced on August 1, 2019, at 3:00 p.m., having pled guilty to conspiracy to commit bank fraud. For the reasons set forth below, the Government submits that a sentence within the Stipulated Guidelines Range of 8 to 14 months' imprisonment is warranted in this case.

### A. Offense Conduct

Count One in the above captioned Indictment charges the defendant with conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349. From at least in or about August 2017 to November 2017, the defendant conspired to commit bank fraud through her involvement in a counterfeit check scheme.

Specifically, the defendant and other known and unknown co-conspirators created and deposited counterfeit checks that appeared to draw from various victim businesses' bank accounts. These counterfeit checks were deposited into the bank accounts of various colluding accountholders at Capital One, N.A. The defendant and other scheme participants then withdrew funds off of these counterfeit checks before the various banks realized the fraud. (*See* Presentence Investigation Report dated June 27, 2019 ("PSR"), ¶¶ 8-13).

### B. Procedural History

The defendant was initially charged by sealed Complaint dated February 9, 2018. A grand jury returned an indictment on February 22, 2018 that charged the defendant and six co-defendants with conspiracy to commit bank fraud and aggravated identity theft, in violation of Title 18, United States Code, Sections 1344 and 1028A.

Hon. Colleen McMahon                                                                                       Page 2
July 29, 2019

The defendant was arrested on February 20, 2018, presented before the James L. Cott, United States Magistrate Judge, and released on bail subject to home detention with GPS monitoring, among other conditions. (*See* Dkt. No. 25.)  On June 11, 2018, the District Court removed the condition of home detention.

On January 11, 2019, the defendant entered a guilty plea, pursuant to a plea agreement, before the Honorable Katharine H. Parker, United States Magistrate Judge, to conspiracy to commit bank fraud.  The District Court accepted the plea allocution by order dated January 14, 2019. (*See* Dkt. No. 164.)

On June 27, 2019, the Probation Office issued the final Presentence Report, which, consistent with the parties' plea agreement, calculates a Guidelines range of 8 to 14 months' imprisonment based upon an offense level of 11, adjusted for a loss amount of $40,000 to $95,000, and a Criminal History Category of I.  The Government is seeking restitution in the total amount of $38,251.24 for Capital One, N.A.

All of the other defendants in this case have entered guilty pleas and already been sentenced as follows:
- Sire Gaye to two months' imprisonment on November 14, 2018,
- Sierra Cameron to eight months' imprisonment on February 8, 2019,
- Pierre Schneider to eight months' imprisonment February 27, 2019,
- Widolph Brumaire to a term of 41 months' imprisonment on May 14, 2019,
- Anthony Castillo to time served on June 19, 2019, and
- Robbie Black to a term of 30 months' imprisonment on July 9, 2019.

**C.  Adjustment to Pre-Trial Supervision**

Though the Presentence Report states that the defendant has been compliant with the terms of his pre-trial release, the Pretrial Office alerted the parties that the defendant was arrested in Brooklyn, New York on April 17, 2019.  Records from Kings County Criminal Court reflect that the defendant was arraigned on criminal possession of stolen property in the fifth degree in violation of New York Penal Law § 165.40, possession of a forged instrument in the third degree in violation of New York Penal Law § 170.20, aggravated unlicensed operation of a motor vehicle in the third degree in violation of New York Vehicle and Traffic Law § 511, and unsafe turning and failure to signal in violation of New York Vehicle and Traffic Law § 1163.

On July 15, 2019, the defendant pled guilty to a single count of driving without a license in violation of New York Vehicle and Traffic Law § 509(1) and the remaining charges were dismissed.

**D.  Discussion**

**1.  Applicable Law**

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005).  Although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and

Hon. Colleen McMahon                                                                 Page 3
July 29, 2019

that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)    to afford adequate deterrence to criminal conduct;
(C)    to protect the public from further crimes of the defendant; and
(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### 2. A Sentence Within the Stipulated Guidelines Range is Appropriate in this Case.

The Government respectfully submits that the application of the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) weigh heavily in favor of a sentence within the Stipulated Guidelines Range of 8 to 14 months' imprisonment. A Guidelines sentence is necessary here to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to this defendant and other similarly situated individuals, and to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

*First*, a sentence within the Guidelines Range is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A).

As the Government has previously set forth in other sentencing submissions in this case, schemes of this kind present a major problem and expense for financial institutions and the consumers they serve. Counterfeit check schemes are widespread, and, because of the use of legitimate businesses' account information on the counterfeit checks, difficult to detect and to stop. Here, the bank fraud conspiracy in which the defendant was involved was prolific, involving numerous co-conspirators, accounts, and transactions, and sophisticated, involving exactly the kind of business accounts that can accumulate substantial losses. A significant sentence for

defendants involved in such schemes is necessary to reflect the seriousness, and the effects, of such crimes.

Also relevant is the defendant's role in the offense conduct.  The defendant was linked to a substantial amount of fraud, with an intended loss amount of $86,305.72 and an actual loss amount of $38,251.24 based upon fraudulent activity occurring through twenty separate accounts.  As described below and as reflected in the loss amount,[1] Thomas had a more substantial role than many other members of the conspiracy.

Two of the defendant's co-defendants had higher loss amounts: Widolph Brumaire and Robbie Black.  However, those co-defendants' social media communications and the chronology of fraudulent transactions show that, in important respects, Thomas was treated as an equal participant in the conspiracy.  On November 21, 2017, Robbie Black provided to Thomas the personal identifying information of a particular accountholder (identified in the Complaint as Collusive Accountholder-6).  Black also provided Thomas with a screenshot of the account's balance.  In other words, Black shared account information with Thomas for his independent use.  (This particular account was shut down because of fraudulent activity shortly thereafter.)  Widolph Brumaire received the information for a particular victim business (identified in the Complaint as Victim Business-2) on August 31, 2017, which information was subsequently used by Thomas on numerous counterfeit checks that Thomas deposited in early October 2017.

Moreover, the defendant's own social media activity reflects efforts to recruit accountholders willing to allow their accounts to be employed in the scheme. The role of recruiting accountholders was an essential part of the fraud, as the scheme required a steady supply of new accounts through which counterfeit checks could pass.  For example, on his Snapchat account, the defendant posted a photograph of stacks of cash with a message "#NoPromises . . . Get Next to Me," thereby advertising the possibility of profits and inviting an online audience to work with him ("Get Next to Me").  In at least two other Snapchat postings captured by agents during the investigation, the defendant posted photographs of large amounts of cash.  For example, Thomas posted four wads of $20 bills with a message: "SHAMELESS [emoji] .. YOU LIL KIDS UNDER 100-200 Stay In Your Lane."  In a second example, Thomas posted a single stack of cash being withdrawn from an ATM with text that read: "I'm Your Bosses BOSS. REMEMBER THAT."  These posts, in addition to being oriented towards recruitment, reveal the defendant's access to and control over the proceeds of the scheme.

*Second*, a sentence within the Stipulated Guidelines range is necessary to protect the public and provide effective deterrence.  As set forth in the PSR, the defendant has previously engaged in the same kind of fraud as in the present offense. On July 25, 2017, the defendant was arrested in New Jersey in possession of a laptop, printer, 167 blank watermarked checks, and ten or more bank-related items (including debit or credit cards, checks, and deposit slips) belonging to five or more victims.  (PSR ¶ 41).  The items found in his possession are the exact tools needed to engage in a counterfeit check scheme like the defendant was engaged in here.

Moreover, the timing of the defendant's arrest is particularly significant.  The conspiracy to which the defendant pled guilty in this case began in August 2017, and the defendant was

---

[1] Sierra Cameron, Pierre Schneider, Sire Gaye, and Anthony Castillo each were held responsible for an intended loss in the range of $15,000 to $40,000.

Hon. Colleen McMahon                                                    Page 5
July 29, 2019

involved in fraudulent transactions through the fall of 2017.  In other words, the defendant brazenly continued to engage in fraud immediately after his New Jersey arrest in July 2017.  The defendant demonstrated himself to be undeterred by this interaction with law enforcement.

Furthermore, the defendant was arrested in April 2019 while on supervised release for this offense, after having pled guilty to the offense conduct.  Though the charges related to bank fraud were ultimately dismissed, the defendant's interaction with law enforcement and his driving without a license is a troubling indication that the fact of his supervision has not been an effective deterrent.  The defendant's request for a sentence of time served is inadequate to address the need for deterrence.  The defendant's previous interaction with law enforcement in July 2017 was inadequate to deter him from engaging in the instant offense in the months that followed.  The defense offers no explanation for why this arrest will be more effective.

*Third*, as to general deterrence, a sentence within the Guidelines Range would send a message to others who would consider committing bank fraud (at the cost of banks and/or innocent victims) that such conduct carries serious consequences. The Government respectfully submits that a nontrivial term of incarceration is necessary to deter the defendant from future offenses, and to achieve the sentencing goal of protecting the public.

### E. Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence within the Guidelines Range of 8 to 14 months' imprisonment would be fair and appropriate in this case.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: _____
Mollie Bracewell
Assistant United States Attorney
(212) 637-2218

cc:    James Froccaro, Esq. (via ECF)