
**U.S. Department of Justice**



*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 6, 2020

**VIA ECF**

The Honorable Colleen McMahon
Chief United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

     Re: *United States* v. *Darren Thomas*, 18 Cr. 153 (CM)

Dear Chief Judge McMahon:

     On April 27, 2020, counsel for Darren Thomas ("Thomas" or "the defendant") filed a motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) seeking his release from the Metropolitan Detention Center ("MDC") to home confinement in light of the COVID-19 pandemic. (*See* Def. Mot., Dkt. No. 252). The Court should deny the defendant's request for two reasons: first, the defendant's motion is premature because he has failed to exhaust his administrative remedies; and second, the defendant has made no showing of extraordinary and compelling reasons for his release.

**Background**

     On January 11, 2019, the defendant pled guilty to one count of conspiracy to commit bank fraud for his involvement in a counterfeit check scheme. Specifically, the defendant and his co-conspirators created and deposited counterfeit checks that appeared to draw from various victim businesses' bank accounts. These counterfeit checks were deposited into the bank accounts of various colluding accountholders at Capital One, N.A. The defendant and other scheme participants withdrew funds off of these counterfeit checks before the various banks realized the fraud.

     On August 1, 2019, the defendant was sentenced to eight months' imprisonment. He self-surrendered on February 2, 2020 and is presently serving his sentence at the MDC. The defendant's scheduled release date is October 1, 2020.

     On April 27, 2020, the defendant filed the instant motion, seeking compassionate release based on the health risk presented by COVID-19 and the MDC's purported failure to protect

May 6, 2020
Page 2

him.[1]  Specifically, the defendant works at the commissary in the MDC, which he claims requires him to come into contact with inmates and staff throughout the MDC and therefore places him at increased risk.

## **Legal Standard**

Title 18, United States Code, Section 3582 states that a sentencing court "may not modify a term of imprisonment once it has been imposed" except under certain specific conditions. Relevant here, one such exception is that

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction [. . .] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission likewise has promulgated a policy statement and accompanying application notes under U.S.S.G. § 1B1.13 addressing appropriate circumstances for a reduction in sentence pursuant to § 3582(c).[2]  In particular, the policy statement provides that a reduction of sentence is permitted if: "extraordinary and compelling reasons warrant the reduction," U.S.S.G. § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* § 1B1.13(3).

---

[1] The defendant's motion concedes that he has not exhausted his administrative remedies.  The defendant attached as Exhibit D to his motion an email dated April 27, 2020 from defense counsel to the Bureau of Prisons ("BOP") regarding a reduction of the defendant's sentence.  Based on discussions with the BOP, the email correspondence attached as Exhibit D was not received and the email address is not associated with any BOP personnel as it does not reflect their email conventions.  Furthermore, they have no record of any other request from the defendant regarding a compassionate release.

[2] Because the governing statute requires that a ruling concerning compassionate release be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13 is binding on the Court. *See Dillon v. United States*, 560 U.S. 817, 827 (2010).

May 6, 2020
Page 3

As the proponent of the motion, the defendant bears the burden of proving that "extraordinary and compelling reasons" exist under the above criteria to justify early release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

## Discussion

### A. The Defendant Has Not Exhausted His Administrative Remedies.

In his submission, the defendant concedes that he has failed to exhaust his administrative remedies. Because such exhaustion is mandatory, the court lacks the authority to grant compassionate release at this time.

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." *Id.* § 3582(c)(1)(A)(i). A motion under this provision may be made by either the BOP or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Section 3582(c)(1)(A)'s exhaustion requirement is therefore mandatory. It is critical, in this context, to note that Section 3582(c)'s exhaustion requirement is statutory, and thus is not the sort of judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). By significant contrast, *statutory* exhaustion requirements "stand[] on a different footing." *Id.* There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Id.* Thus, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. *Id.*; *see also Bastek v. Fed. Crop. Ins.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, we are not free to rewrite the statutory text.").

As described above, Section 3582(c)(1)(A) contains mandatory exhaustion language with no statutory exceptions. The plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights" or waited 30 days after transmitting his request to the warden. Unlike the Prison Litigation Reform Act ("PLRA"), for example, there is no statutory qualifier that a defendant need only exhaust all "available" remedies.[3] *See also* 28 U.S.C. § 2254(b)(1)(A) (habeas

---

[3] In particular, the PLRA demands that an inmate exhaust "such administrative remedies *as are available*," meaning that the only permissible exception to exhaustion is where the remedies are "unavailable." *Ross,* 136 S. Ct. at 1856-58 (emphasis added); *see also id.* at 1855 (criticizing the

May 6, 2020
Page 4

statute requires exhaustion of all remedies "available in the courts of the State"). Thus, Section 3582(c)(1)(A) is a mandatory exhaustion provision with no applicable exceptions. *Cf. Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims).  As Circuit Judge Sullivan, sitting by designation, recently explained, Section 3582(c)'s exhaustion requirement is "clear as day" and is therefore mandatory. *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3 (S.D.N.Y. Apr. 14, 2020).

In recent weeks, numerous defendants around the country have cited the unusual circumstances presented by COVID-19 as a basis for compassionate release, and have argued that the exhaustion requirement should be excused. The only court of appeals to have addressed the question has rejected the argument and required exhaustion. *See United States v. Raia*, __ F.3d __, 2020 WL 1647922 (3d Cir. Apr. 2, 2020). In *Raia*, the Third Circuit recognized the serious concerns presented by COVID-19, but held that, in light of these concerns, as well as the BOP's statutory role and its "extensive and professional efforts to curtail the virus's spread, . . . strict compliance with Section 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* at *2.  The vast majority of district courts in this District have also required exhaustion despite COVID-19 claims.[4] These decisions are consistent with the plain language of Section 3582(c).

---

"freewheeling approach" adopted by some courts of appeals to exhaustion requirements, and overruling precedent from the Second Circuit and other circuits that had read additional exceptions into the rule).  Here, no such exception exists in the statute.

[4] *See United States v. Wright*, 17 Cr. 695 (CM), 2020 WL 1922371, at *2 (S.D.N.Y. Apr. 20, 2020); *United States v. Demaria*, No. 17 Cr. 569 (ER), 2020 WL 1888910, at *4 (S.D.N.Y. Apr. 16, 2020); *United States v. Ogarro*, No. 18 Cr. 373 (RJS), 2020 WL 1876300, at *3-*5 (S.D.N.Y. Apr. 14, 2020); *United States v. Bonventre*, 10 Cr. 228 (LTS), 2020 WL 1862638, at *2-*3 (S.D.N.Y. Apr. 14, 2020); *United States v. Pereyra-Polanco*, 19 Cr. 10 (NRB), 2020 WL 1862639, at *1 (S.D.N.Y. Apr. 14, 2020); *United States v. Rabadi*, No. 13 Cr. 353 (KMK), 2020 WL 1862640, at *2-*3 (S.D.N.Y. Apr. 14, 2020); *United States v. Reese*, No. 12 Cr. 629 (VM), 2020 WL 1847552, at *2 (S.D.N.Y. Apr. 13, 2020); *United States v. Engleson*, 13 Cr. 340 (RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020); *United States v. Fana*, 19 Cr. 11 (GHW), 2020 WL 1816193, at *5 (S.D.N.Y. Apr. 10, 2020); *United States v. Canale*, 17 Cr. 287 (JPO), 2020 WL 1809287, at *2 (S.D.N.Y. Apr. 9, 2020); *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); *United States v. Ramos*, No. 14 Cr. 484 (LGS), 2020 WL 1685812, at *1 (S.D.N.Y. Apr. 7, 2020); *United States v. Crosby*, No. 09 Cr. 1056 (WHP) (S.D.N.Y. Apr. 7, 2020) (Tr. of 4/7 conference, at 13); *United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020); *United States v. Arena*, No. 18 Cr. 14 (VM) (S.D.N.Y. Apr. 6, 2020) (Dkt. 354 at 2-3); *United States v. Hernandez*, No. 18 Cr. 834 (PAE), 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Cohen*, No. 18 Cr. 602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020). *But see United States v. Scparta*, No. 18 Cr. 578 (AJN), 2020 WL 1910481, at *5 (S.D.N.Y. Apr. 20, 2020); *United States v. Russo*, 16 Cr. 441 (LJL), 2020 WL 1862294, at *7 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, No. 19 Cr. 541 (JSR), 2020 WL 18211988, at *4 (S.D.N.Y. Apr. 13, 2020); *United States v. Perez*, No. 17 Cr. 513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020).

To be sure, COVID-19 presents unusual circumstances, in which compassionate release decisions should be made expeditiously. But the text of Section 3582 contains no exigency exception for such circumstances, and indeed the text affirmatively refutes the availability of such an exception. While many statutory exhaustion provisions require exhaustion of all administrative remedies before a claim is brought in court, Section 3582 provides an alternative: exhaustion of all administrative rights *or* the lapse of 30 days from the warden's receipt of the inmate's request for compassionate release, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). This 30-day alternative rule is a "limited futility-like exception," and, therefore, "[g]iven Congress's decision to mandate exhaustion and specify a single alternative, the Court is not free to infer a 'general unwritten special circumstances exception.'" *United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (quoting *Ross*, 136 S. Ct. at 1856, 1862); *see also United States v. Arena*, No. 18 Cr. 14 (VM) (Dkt. 354 at 2) (S.D.N.Y. Apr. 6, 2020) (stating that there is "simply no authority that permits [the defendant] to circumvent the administrative exhaustion requirement" based on a claim of futility, because the ability to seek relief after 30 days constitutes "an express futility provision"). Ultimately, defendants' arguments regarding the need for a futility exception "boil[] down to a pragmatic insistence that a 30-day waiting period is simply too long to wait in the current health crisis. But there is nothing in the First Step Act or its history to suggest that courts may modulate the exhaustion waiting period when they see fit." *Ogarro*, 2020 WL 1876300, at *5.

As the Third Circuit properly recognized, the mandatory exhaustion requirement accommodates the valuable role that the BOP plays in the compassionate release process. Informed decisions about compassionate release require the collection of information, like disciplinary records and medical history, that the BOP is uniquely suited to obtain and which will benefit both the BOP and later the court evaluating such claims. The BOP is also well situated to make relative judgments about the merits of compassionate release petitions—particularly at a time like this when many inmates are making petitions advancing similar claims—and adjudicate those positions in a consistent manner. The Court may of course review those judgments, but the Congress expressed its clear intent that such review would come second, with the benefit of the BOP's initial assessment. *See United States v. Woodson*, No. 18 Cr. 845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020).

To ignore this mandatory exhaustion requirement would be legal error.

The cases cited by the defendant do not compel a different result. For instance, in *United States v. Haney*, 19 Cr. 541 (JSR), 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (*see* Def. Mot. at 11-12), Judge Rakoff held that, notwithstanding the plain language of Section 3582(c)(1)(A), "Congress cannot have intended the 30-day waiting period . . . to rigidly apply in the highly unusual situation in which the nation finds itself today." *Id.* at *3. Judge Rakoff reached this conclusion by construing the 30-day waiting period as indicative of Congressional intent to accelerate judicial review. *Id.* at *4. But as Circuit Judge Sullivan, sitting on the District Court by designation, has explained, given that Congress expressly chose 30 days as the period after which judicial review is available, courts are not free to make a different choice. *Ogarro*, 2020 WL 1876300, at *5; *see also Roberts*, 2020 WL 1700032, at *2 ("Given Congress's decision to mandate exhaustion and specify a single alternative, the Court is not free to infer a 'general unwritten special circumstances exception.'" (quoting *Ross*, 136 S. Ct. at 1856, 1862)). And despite the suggestion that Congress

May 6, 2020
Page 6

cannot have foreseen circumstances as exigent as the ones now facing the defendant, that simply is not so. Rather, in cases presenting the most urgent circumstance – inmates diagnosed with a terminal illness – Section 3582(d) requires the BOP to process any application for compassionate release in 14 days. That the Congress allowed 14 days to process the claims of even a terminally ill inmate suggests that it could not have intended to allow a shorter period – which excusing exhaustion would provide – in a case, such as this, where the risk to the inmate, while serious, remains potential. It was error for Judge Rakoff to ignore this "glaring roadblock" to judicial review. *Raia*, 2020 WL 1647922, at *2.

*Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019), on which the defendant also relies, is inapposite. (*See* Def. Mot. at 11). That case involved the invocation of a *judge-made* exhaustion doctrine. *See id.* at 116 (stating that the statute in question "does not mandate exhaustion of administrative remedies" but finding that exhaustion requirement was nevertheless appropriate); *id.* at 118 ("Although not mandated by Congress, [exhaustion] is consistent with congressional intent."). Thus, it was appropriate for the court to consider judge-made exceptions. *See Ross*, 136 S. Ct. at 1857. But this case involves a mandatory, statutory exhaustion requirement, which allows for no such exceptions. *See Bastek*, 145 F.3d at 95 (rejecting application of various exceptions to exhaustion requirement where clear statutory requirement exists); *Theodoropoulos v. INS*, 358 F.3d 162, 172 (2d Cir. 2004) (rejecting futility exception to exhaustion requirement in Immigration and Nationality Act because such an exception is "simply not available when the exhaustion requirement is statutory," as opposed to judicial); *United States v. Gonzalez-Roque*, 301 F.3d 39, 46-48 (2d Cir. 2002) (rejecting argument that statutory exhaustion requirement for collaterally attacking a removal order should be excused in light of defendant's *pro se* status in removal proceedings).

To be sure, *Washington* states that: "Even where exhaustion is seemingly mandated *by statute or decisional law*, the requirement is not absolute. The Supreme Court itself has recognized exceptions to the exhaustion requirement under 'three broad sets of categories.'" *Washington*, 925 F.3d at 118 (emphasis added) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)). But the inclusion of the phrase "by statute" is not supported by the citation that follows. *McCarthy* is another case involving a judge-made exhaustion requirement. *See McCarthy*, 503 U.S. at 152 ("Congress has not *required* exhaustion of a federal prisoner's *Bivens* claim."). It thus provides no support for the notion that exhaustion mandated "by statute" is not absolute. *See Bastek*, 145 F.3d at 95 (rejecting application of *McCarthy* exceptions in a statutory case). Further, when *Washington* goes on to discuss three recognized exceptions to exhaustion, it is describing three exceptions recognized in *McCarthy* in the judge-made context. But as the Supreme Court made crystal clear in *Ross*, this ignores the critical distinction between statutory and judge-made exhaustion requirements. As Judge Sullivan has explained, given that *Washington* was a judge-made exhaustion case, its statement that exhaustion mandated "by statute" is "not absolute" is dicta. *See Ogarro*, 2020 WL 1876300, at *4; *see also Woodson*, 2020 WL 1673253, at *3 ("The passing reference to 'exhaustion [that] is seemingly mandated by statute . . . is not absolute' in [*Washington*] was not necessary to the Court of Appeals' holding."); *Roberts*, 2020 WL 1700032, at *2 (rejecting argument that *Washington* permits excusing exhaustion under Section 3582(c); unlike those that are judge-made, "statutory exhaustion requirements, such as those set forth in Section 3582(c), must be strictly enforced"). *Washington*'s dicta cannot supplant the clear statements to the contrary in cases like *Ross* and *Bastek*.

May 6, 2020
Page 7

     The defendant's submission describes that he sought relief from the BOP on April 27, 2020, the same day he filed the instant motion, but, as described above, the motion appears to have been inadvertently sent to a non-existent email address and was therefore never received by BOP. Because the defendant has failed to satisfy the mandatory exhaustion requirement and because the Government does not intend to waive this statutory requirement here, the Court should deny his motion on this basis alone.

## B. The Defendant Has Not Set Forth Extraordinary and Compelling Reasons Warranting a Sentence Reduction

     Even if the defendant had satisfied the administrative exhaustion requirement, his motion should be denied on the merits, because the defendant does not present any specific extraordinary and compelling reason for a reduction of his sentence.

     With respect to the "extraordinary and compelling reasons" requirement, the application notes to Guidelines Section 1B1.13 provide three instances where such reasons exist: (A) the defendant has a serious medical condition, such as a terminal illness; (B) the defendant is, among other things, at least 65 years old and seriously deteriorating; or (C) the defendant's family circumstances have changed such that the defendant is the only available caregiver for a minor child or incapacitated spouse. *See* U.S.S.G. § 1B1.13 app. note 1(A)–(C). The application notes also allow a catchall condition where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at app. note 1(D).

     To put it simply, none of these categories apply to the defendant.  The defendant does not have any health condition, age-related concern, or change in family circumstance that would warrant compassionate release, even in light of the novel circumstances presented by COVID-19. The defendant is in the same situation as the vast majority of the inmates housed in BOP facilities during this outbreak. At most, the defendant offers the generalized speculation that he might suffer unexpectedly severe adverse health consequences if he remains at the MDC and that the MDC would be unable to attend to such adverse health consequences if they arose. But these generalized, speculative assertions fall far short of supporting compassionate release in this case.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:     _____/s/_____
       Mollie Bracewell
       Jamie Bagliebter
       Assistant United States Attorney
       (212) 637-2218/2236